AUSA: Varun A. Gumaste

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

MIGUEL EMILIO GARCIA,

Defendant.

25 MAG 3137

**COMPLAINT**

Violations of 21 U.S.C. §§ 841, 846, and 18 U.S.C. § 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK:

DENNIS CONWAY, being duly sworn, deposes and says that he is a Task Force Officer with Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

### COUNT ONE
### (Conspiracy to Distribute Narcotics)

1. In or about September 2025, in the Southern District of New York and elsewhere, MIGUEL EMILIO GARCIA, the defendant, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed, together and with each other, to violate the controlled-substance laws of the United States.

2. It was a part and an object of the conspiracy that MIGUEL EMILIO GARCIA, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that MIGUEL EMILIO GARCIA, the defendant, conspired to distribute and possess with intent to distribute was one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

### COUNT TWO
### (Distribution of Narcotics)

4. On or about September 30, 2025, in the Southern District of New York and elsewhere, MIGUEL EMILIO GARCIA, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and aided and abetted the same.

5. The controlled substance involved in the offense was one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6. I am a Task Force Officer with HSI and a Detective with the Fort Lee, New Jersey Police Department, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

7. Based on my participation in this investigation, including my conversations with other members of law enforcement and other individuals, my review of reports and records, and my review of text communications, photographs, and recordings, I have learned the following, in substance and in part:

   a. On or about September 28, 2025, in a series of communications that included WhatsApp text messages and at least one video call, a confidential source working at the direction of law enforcement ("CS-1"),[1] an associate of CS-1, and another individual ("CC-1") discussed, in substance and in part, arranging a narcotics transaction in New York.[2] From my review of text messages and my discussions with CS-1, I have learned, in substance and part, that CC-1 agreed to sell CS-1 approximately two kilograms of heroin, which CS-1's associate referred to as "morena,"[3] in exchange for approximately $19,000 per kilogram.

   b. On or about September 29, 2025, CS-1's associate provided CC-1, via WhatsApp text message, a photograph of a U.S. dollar bill with the serial number visible (the "Token"), to be used as a token for the transaction.[4] CC-1 provided CS-1's associate, via

---

[1] CS-1 has served as a confidential source for HSI since approximately 2022 in exchange for monetary compensation. CS-1 was previously convicted of a federal narcotics offense. Information provided by CS-1 has been found reliable and corroborated and has led to multiple seizures of narcotics.

[2] All recordings and text messages referenced in this Complaint were in Spanish. I do not speak Spanish, but a Spanish-speaking law enforcement agent has reviewed these text messages and recordings to understand, in substance and in part, their content. All translations of Spanish language communications are draft and subject to change upon review by a certified linguist.

[3] Based on my training and experience, I know that "morena" or "brown" is a common code word for heroin.

[4] Based on my training and experience, I know that a token is a specific object or sequence of numbers and letters used by those involved in a narcotics transaction to confirm that they are in

WhatsApp text message, an address on West 180th Street in Manhattan (the "Meet-Up Location"), where they agreed the heroin would be delivered.

    c.  On or about September 30, 2025, CS-1's associate provided CC-1, via WhatsApp text message, a phone number of an undercover law enforcement officer ("UC-1") who would pick up the heroin at the Meet-Up Location. At approximately 11:42 a.m., UC-1 received a WhatsApp text message from an individual ("CC-2") with the Meet-Up Location. UC-1 and CC-2 arranged to meet later that afternoon. CC-2 stated, in sum and substance, that CC-2's cousin would meet with UC-1 to complete the transaction. At approximately 4:39 p.m., CC-2 confirmed via WhatsApp text message, in sum and substance, that his cousin was available to meet UC-1, and UC-1 proceeded to the Meet-Up Location. At approximately 5:21 p.m., UC-1 advised CC-2 via WhatsApp text message, in sum and substance, that UC-1 had arrived near the Meet-Up Location, specifically on the corner of West 180th Street and Wadsworth Avenue, and was driving a grey GMC sport utility vehicle. At approximately 5:51 p.m., CC-2 advised UC-1 via WhatsApp text message, in sum and substance, that his cousin was coming to meet UC-1 and that his cousin was a large Dominican male.

    d.  At approximately 6:08 p.m., an individual later identified as MIGUEL EMILIO GARCIA, the defendant, approached and entered UC-1's vehicle carrying a grey backpack (the "Backpack"). UC-1 audio and video recorded the meeting. Below is a screenshot depicting GARCIA moments after he entered UC-1's vehicle.



    e.  Based on the recording of the meeting and my conversations with UC-1, when GARCIA entered UC-1's vehicle, GARCIA was on a video call with another individual ("CC-3"). CC-3 directed GARCIA to ask UC-1 for the Token. UC-1 retrieved the Token and compared it to a picture of the Token on GARCIA's phone. After GARCIA confirmed that the Token and picture were identical, he asked, in sum and substance, to keep the Token as proof that he had met with UC-1. UC-1 provided the Token to GARCIA. Subsequently, UC-1 asked, in sum and substance, if GARCIA had the product in the Backpack. GARCIA confirmed and stated, in sum and substance, that there were three boxes in the Backpack. GARCIA handed the Backpack to UC-1 and stated, in sum and substance, that everything was as he had received it. When UC-1

---

fact the correct parties to such transaction. In this case, the token used was a particular serial number of a U.S. dollar bill.

opened the Backpack, GARCIA removed a black plastic bag from the Backpack and opened it to show UC-1 its contents. GARCIA removed three small colored boxes labeled as chocolate candy (the "Boxes") and placed them on the center console of the car. UC-1 opened one of the Boxes and observed four individually wrapped objects labeled as chocolate candy on top of a larger object wrapped in silver foil, which felt like it contained powder. GARCIA then opened the remaining two boxes so that UC-1 could see the contents. While doing so, GARCIA stated, in sum and substance, that he likes to do things correctly and be transparent. UC-1 and GARCIA placed the Boxes and the black plastic bag back in the Backpack, and UC-1 told GARCIA, in sum and substance, that he was pleased with the product.

    f.  Below is a screenshot depicting GARCIA opening one of the Boxes.



    g.  At approximately 6:14 p.m., GARCIA exited UC-1's vehicle without the Backpack. At this point, law enforcement approached GARCIA and placed him under arrest.

    h.  Law enforcement recovered the three Boxes, which each contained an object wrapped in silver foil (the "Packages"). Law enforcement conducted a field test on the contents of one of the Packages, and the result of that field test was consistent with the presence of heroin. The Boxes and their contents weighed approximately two kilograms. Photographs of the seized Backpack, Boxes, and Packages are depicted below.






WHEREFORE, I respectfully request that MIGUEL EMILIO GARCIA, the defendant, be imprisoned or bailed, as the case may be.

DENNIS CONWAY
Task Force Officer
Homeland Security Investigations

Sworn to before me on
this 1st day of October 2025.

THE HONORABLE ROBYN F. TARNOFSKY
United States Magistrate Judge
Southern District of New York